***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner with some modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. I.C. Numbers 756104 and 756110 were combined for hearing by consent of the parties.
2. On October 11, 1995 and April 17, 1996, the parties were bound by and subject to the North Carolina Workers' Compensation Act.
3. On said dates, the employer-employee relationship existed between the parties.
4. Defendant was a duly authorized self-insurer under the provisions of the Act.
5. The alleged injuries giving rise to plaintiff's claims occurred on October 11, 1995 and April 17, 1996, respectively.
6. On the dates in question, plaintiff was earning an average weekly wage of $174.00 and $236.64, respectively.
7. That the issues to be determined by the Commission are:
 a. Did plaintiff sustain an injury by accident arising out of and in the course of her employment with defendant-employer on October 11, 1995 and April 17, 1996, respectively; and,
 b. If so, are the injuries of which plaintiff complains caused by the said accidents; and,
 c. If so, to what compensation, if any, is plaintiff entitled under the Act.
8. The parties stipulated into evidence a Pre-Trial Agreement and 50 pages of personnel records as Stipulated Exhibits One and Two respectively. The parties further stipulated that plaintiff began working for defendant-employer January 1, 1994, last performed her work duties for defendant-employer February 5, 1997, began employment with another employer on February 5, 1997, and has not been employed since April 24, 1998.
9. Plaintiff is claiming, among other benefits under the North Carolina Workers' Compensation Act, temporary total disability compensation benefits from May 19, 1996 to May 30, 1996 and from July 20, 1996 to October 3, 1996.
10. At the hearing before the Deputy Commissioner on February 16, 1999, the parties introduced the following exhibits:
 a. Defendant's Exhibit 1, marked D1, consisting of a Form 19 dated November 29, 1995.
 b. Defendant's Exhibit 2, marked D2, consisting of a Form 19 dated April 4, 1997.
c. Plaintiff's Exhibit 1, marked P1, consisting of a
11. The depositions of Steven S. Hughes, M.D., Francisco Naviera, M.D. Thomas W. Price, IV, D.P.M., P.A, and Bob I. Wodecki, M.D. were received into evidence.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. Plaintiff had been employed by defendant-employer since January 1, 1994 as a cook and worker.
2. On February 5, 1997, plaintiff terminated her employment with defendant-employer to take a job with another employer for economic reasons. Plaintiff began her new job February 5, 1997, and after April 24, 1998 was no longer able to work due to a heart attack.
3. Plaintiff had a pre-existing diabetic condition which was not related to her workers' compensation claims.
4. On October 11, 1995, as plaintiff was conducting an inventory of a freezer in the performance of her work duties, she pulled down a container of frozen food and felt a pop in her neck. Plaintiff reported the incident to defendant-employer.
5. Plaintiff was treated by Dr. Steven S. Hughes, an orthopaedic surgeon, on November 1, 1995 for pain in her neck with numbness in her left arm, thumb and index fingers. Dr. Hughes diagnosed cervical spondylosis at the C5-6, C6-7 level which was causing partial paralysis due to radiculopathy in the left arm. Dr. Hughes testified that the radiculopathy was from nerve compression originating in plaintiff's neck. Plaintiff related her neck pain to an accident at work and stated that she had experienced pain for several weeks since the accident.
6. Plaintiff returned to Dr. Hughes in May 1996 with similar complaints including severe left arm pain, weakness and numbness. At the hearing before the Deputy Commissioner, plaintiff presented an out of work note for May 19, 1996 to May 30, 1996 from Dr. Hughes but according to defendant-employer's attendance records, plaintiff worked during that period. At his deposition, Dr. Hughes testified that he did not write plaintiff out of work for that period of time.
7. When plaintiff returned to see Dr. Hughes in January 1997, she was working but had the same complaints of pain. As a result of the injury to her neck, plaintiff sustained a fifteen percent permanent partial disability rating to her back. Dr. Hughes testified and the Commission finds that plaintiff may require surgery on her neck in the future.
8. As a result of the October 11, 1995 accident, plaintiff has been diagnosed with and received treatment for fibromyalgia. One of plaintiff's treating physicians, Bob I. Wodecki, a rheumatologist, testified that there was a connection between the October 11, 1995 accident and plaintiff's fibromyalgia. Therefore, the Full Commission finds that plaintiff's fibromyalgia is causally related to the October 11, 1995 accident.
9. On April 17, 1996, plaintiff dropped a box of frozen doughnuts weighing approximately fifteen to twenty-five pounds on her right foot. Plaintiff notified her supervisor of this accident.
10. Plaintiff was referred to Thomas W. Price, IV, a podiatrist, for pain in her right foot. Plaintiff first saw Dr. Price on July 24, 1996. Dr. Price diagnosed plaintiff with a stress fracture and crossover of the second metatarsal bone of her right foot. Dr. Price put plaintiff in a soft cast and a healing splint and wrote plaintiff out of work. Plaintiff returned to Dr. Price two days later on July 26, 1996 because she could not tolerate the soft cast and splint. Dr. Price prescribed a CAM walker for plaintiff, which is a removable cast, and wrote her out of work until her next appointment in two weeks.
11. Plaintiff continued to treat with Dr. Price through December 1996. Plaintiff's condition improved with the use of the CAM walker. Plaintiff returned to work on October 3, 1996. Dr. Price testified that plaintiff has a thirty to fifty percent permanent partial disability to her right foot. This rating was based on the American Medical Association rating system rather than the North Carolina Workers' Compensation guidelines. The Commission finds that as a result of the April 17, 1996 injury by accident, plaintiff sustained a thirty percent permanent functional impairment to her right foot.
12. Plaintiff was earning an average weekly wage of $174.00 on October 11, 1995 and $236.64 on April 17, 1996.
13. Any disability which plaintiff had after April 24, 1998 was not related to plaintiff's on the job injuries which occurred while employed by defendant-employer.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On October 11, 1995, plaintiff sustained a specific traumatic incident of the work assigned arising out of and in the course of her employment with defendant-employer resulting in a fifteen percent permanent partial disability to the back and fibromyalgia. N.C. Gen. Stat. § 97-31(23).
2. On April 17, 1996, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer resulting in a thirty percent permanent partial disability to her right foot. N.C. Gen. Stat. § 97-31(14).
3. As a result of the April 17, 1996 injury by accident, plaintiff was disabled and is entitled to temporary total disability compensation benefits from July 20, 1996 to October 3, 1996 at the rate of $157.76 per week. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to medical expenses incurred or to be incurred as a result of the injuries occurring October 11, 1995 and April 17, 1996. The approved medical expenses include treatment for plaintiff's fibromyalgia. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. For the fifteen percent permanent partial disability rating to her back, defendant shall pay to plaintiff compensation benefits at the rate of $116.00 per week for 45 weeks. This amount has accrued and shall be paid in a lump sum subject to the attorney's fee approved below.
2. For the thirty percent permanent partial disability rating to her right foot, defendant shall pay to plaintiff compensation benefits for 43.2 weeks at the rate of $157.76 per week. This amount has accrued and shall be paid in a lump sum subject to the attorney's fee approved below.
3. Defendant shall pay to plaintiff temporary total disability compensation benefits from July 20, 1996 to October 3, 1996 at the rate of $157.76 per week. This amount has accrued and shall be paid in a lump sum subject to the attorney's fee approved below.
4. Defendant shall pay all medical expenses resulting from the injuries occurring October 11, 1995 and April 17, 1996, including plaintiff's fibromyalgia, which may tend to effect a cure or give relief to plaintiff's complaints when the same have been presented and approved as by law provided.
5. An attorney's fee of twenty-five percent of the compensation herein allowed is hereby approved and awarded to plaintiff's attorney for his services to plaintiff. This amount shall be deducted from the compensation due plaintiff in paragraphs one, two, and three of this award.
6. Defendant shall pay the costs.
This the ______ day of March 2002.
 S/_____________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________________________ THOMAS J. BOLCH COMMISSIONER
S/_____________________________ CHRISTOPHER SCOTT COMMISSIONER
LKM/mhb